IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| JAMES BILLMAN | : | CIVIL ACTION |
|---|---|---|
| v. | : | No. 10-2996 |
| TOM CORBETT, et al. | : | |

## MEMORANDUM

**Juan R. Sánchez, J.**                                              **February 15, 2011**

Defendants Tom Corbett and Brian Westmoreland ask this Court to grant judgment on the pleadings in their favor on Plaintiff James Billman's claims Defendants violated his constitutional rights. Because Billman's complaint fails to allege a violation of his First or Fourth Amendment rights, Defendants' motion is granted.

**FACTS**[1]

Defendant Tom Corbett is the current Governor of Pennsylvania. On May 17, 2010, when Corbett held the position of Pennsylvania Attorney General and was running for Governor, he spoke at a public campaign meeting held at a hotel. Billman was present at the meeting and asked Corbett, "what are you going to do if the Kimmett case goes to trial?" Compl. ¶ 16. Receiving no response, Billman repeated his question. After Billman asked the question again, Corbett left the podium and approached him. Corbett "shook his finger angrily in Billman's face as Corbett's face became scarlet and the veins in his neck bulged out," causing Billman to feel threatened and intimidated. Compl.

---

[1] In deciding a motion for judgment on the pleadings, a court accepts all allegations in the complaint as true and draws all reasonable inferences in favor of the nonmoving party. *Turbe v. Gov't of the V.I.*, 938 F.2d 427, 428 (3d Cir. 1991).

¶ 20-21. Westmoreland, a man Billman believed to be Corbett's bodyguard[2], also approached Billman, grabbed his arm, and attempted to pull him from the conference room. After Corbett walked away, a young woman asked Billman if he would leave, and he did so.

On June 21, 2010, Billman filed the instant case against Corbett and Westmoreland, asserting Fourth Amendment excessive force and First Amendment retaliation claims against both Defendants.

**DISCUSSION**

Defendants seek judgment on the pleadings in their favor on both of Billman's claims, pursuant to Federal Rule of Civil Procedure 12(c). A motion for judgment on the pleadings is analyzed under the same standards as a Rule 12(b)(6) motion to dismiss. *Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) (internal quotation marks omitted). Judgment on the pleadings "will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (citations omitted).

Billman brings his constitutional claims pursuant to 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Revell*, 598 F.3d at 134 (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).

---

[2] In his response to Defendants' motion for judgment on the pleadings, Billman refers to Westmoreland and another man, identified as "Mr. Campbell," interchangeably. Because Billman's complaint names only Corbett and Westmoreland as defendants, this Court will assume the references to Mr. Campbell mean Westmoreland.

To establish personal liability in a § 1983 action, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citation omitted).

Billman first claims Defendants violated his Fourth Amendment rights by using excessive force against him. "To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Curley v. Klem*, 499 F.3d 199, 230 n.4 (3d Cir. 2007) (citation omitted). A seizure occurs "whenever [a governmental actor] restrains the freedom of a person to walk away." *Id.* (quoting *Tenn. v. Garner*, 471 U.S. 1, 7 (1985)) (internal alterations and quotation marks omitted). The use of force to effect a seizure is permissible as long as the defendant's actions are objectively reasonable in light of the facts and circumstances confronting him. *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004).

Billman asserts Corbett "shook his finger angrily in Billman's face." Compl. ¶ 20. A Fourth Amendment seizure does not occur unless there has been "a governmental termination of freedom of movement *through means intentionally applied*." *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596 (1989); *see also Terry v. Ohio*, 392 U.S. 1, 19 (1968) (holding a seizure occurs when "by means of physical force or show of authority" a government actor has "in some way restrained the liberty of a citizen"). Because Billman has not alleged Corbett, by shaking his finger, restrained Billman's freedom of movement, his excessive force claim against Corbett fails on its face.

Next, Billman asserts Westmoreland "grabbed [him] by the left arm, and applying significant force, attempted to extricate him from the room." Compl. ¶ 19. Billman states Westmoreland's actions "did not cause excruciating pain but [were] very uncomfortable and intimidating." Pl.'s Resp. to Defs.' Mot. 2. At no point was Billman prevented from leaving or forced to stay at the campaign

3

rally. Although temporarily grabbing a person's arm momentarily restrains the person's freedom to walk away, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citation omitted). Even assuming Westmoreland's actions were sufficient to constitute a seizure, because Billman's arm was grabbed only momentarily and, admittedly in a manner that was "uncomfortable," but not painful, Billman has failed to allege Westmoreland's actions were objectively unreasonable and has thus failed to state a plausible claim for relief on his excessive force claim against Westmoreland. *See Iqbal*, 129 S. Ct. at 1949-50 ("Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown that the pleader is entitled to relief.") (internal alterations and quotation marks omitted).

Moreover, even if Billman had stated an excessive force claim against Westmoreland, Westmoreland – to the extent he is sued in his personal capacity[3] – is entitled to personal immunity defenses, such as objectively reasonable reliance on existing law. *See Graham*, 473 U.S. at 166-67

---

[3] Billman does not clarify whether he brings suit against Corbett and Westmoreland in their official or personal capacities. This distinction is relevant because "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law," while official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (citation omitted).

Where a plaintiff does not specify in which capacity he brings suit against government agents, courts examine the complaint and the "course of proceedings" to determine the nature of the liability the plaintiff seeks to impose. *Garden State Elec. Inspection Servs., Inc. v. Levin*, 144 F. App'x 247, 251 (3d Cir. 2005) (quoting *Graham*, 473 U.S. at 167). Because Billman did not add the Commonwealth of Pennsylvania as a defendant or assert a claim against the State pursuant to *Monell v. Department of Social Services*, 436 U.S. 568 (1978), this Court finds Billman is suing Corbett and Westmoreland in their personal capacities as the Attorney General of Pennsylvania and his guard, respectively.

(explaining a defendant sued in his personal capacity may assert personal immunity defenses which are unavailable to defendants in official-capacity suits). In the instant motion, Westmoreland asserts his entitlement to immunity, arguing his conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have been aware. Defs.' Mot. 11 (citing *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009)).

In order to determine whether a government actor is entitled to immunity, this Court considers both whether Billman has adequately pled a violation of a constitutional right and whether, if properly pled, the right at issue "was clearly established at the time of a defendant's alleged misconduct." *Montanez v. Thompson*, 603 F.3d 243, 250 (3d Cir. 2010) (citations omitted). To establish violation of a constitutional right, it is not enough for Billman to rely upon the general proposition that use of excessive force is contrary to the Fourth Amendment. *Saucier v. Katz*, 533 U.S. 194, 202 (2001). Instead, he must show "the contours of the right [were] sufficiently clear that a reasonable official would understand that what he [did] violate[d] that right." *Id.* (citation omitted). Here, Billman has failed to establish that momentarily grabbing someone's arm constitutes a violation of a clearly established right. Instead, for force to be constitutionally excessive, it must rise above the de minimis level. *See Saucier*, 533 U.S. at 209 (holding the officer who pulled a protestor from an event at which Vice President Al Gore was speaking, and who violently shoved the protestor into the back of a van but did not hurt or injure him was entitled to qualified immunity on the protestor's excessive force claim); *Burr v. Hasbrouck Heights Police Dep't*, 131 F. App'x 799, 803 (3d Cir. 2005) (holding officers who grabbed suspect's arms, causing small bruises, to prevent her from fleeing, did not use excessive force); *see also Treiber v. Rompala*, No. 01-5049, 2002 U.S. Dist. LEXIS 12650, at *14 (N.D. Ill. Jul. 10, 2002) (granting qualified immunity to police officer

5

who grabbed junior officer's arm, explaining that "a reasonable officer in [the defendant's] position would not have considered that [the plaintiff's] constitutional rights were in jeopardy when he allegedly grabbed and twisted her arm"). Viewing the facts in the light most favorable to Billman, he has not sufficiently alleged that Westmoreland violated a clearly established constitutional right. Westmoreland is therefore entitled to personal immunity on Billman's excessive force claims.

Billman also asserts claims against both Defendants for First Amendment retaliation. To state a First Amendment retaliation claim, a plaintiff must show he (1) engaged in constitutionally protected speech; (2) was subjected to adverse action or deprived of some benefit; and (3) his protected speech was a "substantial" or "motivating factor" in the adverse action. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977). Defendants argue Billman has failed to state a claim for First Amendment retaliation because he has failed to show he engaged in constitutionally protected speech or that he was subjected to an adverse action.

Billman contends he engaged in constitutionally protected speech by asking Corbett a question at a campaign meeting, and asserts he was retaliated against for his protected speech by Defendants' use of their "badge[s] of authority against him," Compl. ¶ 32, an allegation which presumably includes being yelled at, having his arm grabbed, and being asked to leave the campaign rally. Defendants argue "attempting to engage a candidate in an unscheduled debate during an event on private property is not protected activity" because the First Amendment "does not prevent an organization from restricting the exercise of free speech on private property." Defs.' Mot. 4.

Although the First Amendment prevents a state from "abridging the freedom of speech," U.S. CONST. amend I, it does not "prevent an individual from restricting the exercise of free speech on private property[,]" *Radich v. Goode*, 886 F.2d 1391, 1398 (3d Cir. 1989). Moreover, "private

property does not 'lose its private character merely because the public is generally invited to use it for designated purposes.'" *Id.* (quoting *Lloyd Corp. v. Tanner*, 407 U.S. 551, 569 (1972)). Here, Corbett's campaign rally was held in the conference room of a hotel. Although members of the public were invited to attend the rally, such invitation did not alter the private character of the hotel property. Because Billman's activity took place on private property, he cannot invoke the protection of the First Amendment.

Even if the First Amendment protected Billman's actions, the questions he posed to Corbett still do not constitute constitutionally protected speech because the questions interfered with Corbett's own First Amendment right "to exclude a message [he] did not like from the communication [he] chose to make." *Hurley v. Irish-Am. Gay, Lesbian, & Bisexual Grp. of Boston, Inc.*, 515 U.S. 557, 572-73 (1995) (holding that compelling parade organizer to include a group that expressed a message the organizer did not agree with would be equivalent to "essentially requiring [the organizer] to alter the expressive content of [its] parade"). Similarly, to require Corbett to allow unauthorized and disruptive questions at his campaign meetings would violate "the fundamental rule of protection under the First Amendment, that a speaker has the autonomy to choose the content of his own message." *Id.* at 573; *see also Sistrunk v. City of Strongsville*, 99 F.3d 194, 199 (6th Cir. 1996) (holding the First Amendment does not require political committees to include in their rallies persons who wish to express discordant views).

Moreover, Billman has failed to state how Defendants took retaliatory action against him because, to constitute adverse acts, actions "must be more than de minimis or trivial." *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003) (explaining courts have declined to find "criticism, false accusations or verbal reprimands" amounted to adverse retaliatory action). Because Billman has

failed to establish that he engaged in speech protected by the First Amendment or that any adverse action was taken against him because of such speech, his First Amendment retaliation claim against Defendants is dismissed.

      An appropriate order follows.